IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEX O. PEPRAH,                                    :

      Plaintiff,                              :

v.                                                 :          Civil Action No.  GLR-18-990

CPL. G. WILLIAMS, et al.,                          :

      Defendants.                            :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants CPL. G. Williams, PFC. Lux, DFC. Gregory, D/CPL. Zammillo (collectively, the "Officer Defendants"), and Howard County, Maryland's Motion to Dismiss Counts I, III, IV, and V (ECF No. 15) and Motion to Bifurcate Counts III and IV (ECF No. 16). This 42 U.S.C. § 1983 action arises from the June 2, 2015 arrest of Plaintiff Alex O. Peprah. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant in part and deny in part the Motion to Dismiss and grant in part and deny as moot in part the Motion to Bifurcate.

## I.     BACKGROUND[1]

Peprah is a fifty-one-year-old black man from Ghana. (Compl. ¶ 29). At the time of his June 2, 2015 arrest, he occasionally worked for Uber,[2] driving a black Volkswagen Passat. (Id. ¶¶ 18, 29). On June 2, 2015, Peprah drove a friend and frequent Uber client to

---

[1] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[2] Uber is "a peer-to-peer ridesharing service that utilizes smartphone applications to connect drivers and passengers." (Compl. ¶ 18).

Wild Lilac Lane in Laurel, Maryland. (<u>Id.</u> ¶ 19). After dropping off his friend, Peprah turned onto Phelps Luck Drive and proceeded southward. (<u>Id.</u> ¶¶ 22, 31). Shortly thereafter, three police cruisers began trailing Peprah. (<u>Id.</u> ¶¶ 31–33). Corporal Williams, who was driving one of the three cruisers, initiated a traffic stop of Peprah's car. (<u>Id.</u> ¶ 5). Corporal Williams ordered Peprah to roll down his window and stick out his hands. (<u>Id.</u> ¶¶ 5, 33). Peprah immediately complied. (<u>Id.</u> ¶¶ 5, 33). Two police officers approached the driver's side of Peprah's car. (<u>Id.</u> ¶ 35). Even though Peprah was still wearing his seatbelt, an unidentified uniformed officer, Defendant John Doe, grabbed both of Peprah's wrists and attempted to pull Peprah out of the car. (<u>Id.</u>). Another officer in plainclothes, PFC Lux, put Peprah's car in park and unbuckled Peprah's seat belt. (<u>Id.</u> ¶ 36). The two officers then dragged Peprah out of his car to the middle of the intersection. (<u>Id.</u> ¶ 38). Peprah was then forcibly struck "on the left side of his lower back by a hard object," which caused him to fall to his knees. (<u>Id.</u> ¶¶ 40–41). As he was falling, the uniformed officer jerked Peprah's hands forward, so that he fell to the ground chest-first. (<u>Id.</u> ¶ 41). The officers then handcuffed Peprah. (<u>Id.</u> ¶ 42). Neither of the arresting officers gave Peprah any verbal commands or questioned him. (<u>Id.</u> ¶ 37). Peprah could only hear the commands of a third officer who repeatedly told him "don't move!" (<u>Id.</u>).

An unidentified officer placed Peprah in a police cruiser, and he was detained for well over an hour while his car was searched. (<u>Id.</u> ¶ 45). At an unspecified time, Detectives Gregory and Zammillo removed Peprah's cuffs. (<u>Id.</u> ¶ 47). They then interrogated Peprah for approximately forty-five minutes. (<u>Id.</u>). Eventually, and without

explanation, Peprah was released. (Id. ¶ 50). He was not charged with any crime. (Id.). The police officers were apparently searching for a black male suspect who robbed a Verizon store earlier that day. (Id. ¶¶ 23–28).

On April 5, 2018, Peprah sued Defendants. (ECF No. 1). Peprah's five-Count Complaint alleges: violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution against Officer Defendants (Count I); violations of the Fourth Amendment to the U.S. Constitution against Officer Defendants (Count II); a Monell[3] claim for violations of the Fourteenth Amendment against Howard County (Count III); a Monell claim for violations of the Fourth Amendment against Howard County (Count IV); and violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (Count V). (Compl. ¶¶ 72–118). Peprah brings all claims under 42 U.S.C. § 1983 (2018). (Id.). Peprah seeks monetary relief. (Id. at 14, 16, 19, 20–22).

Defendants filed their Motion to Dismiss Counts I, III, IV, and V on April 30, 2018. (ECF No. 15). On May 14, 2018, Peprah filed an Opposition. (ECF No. 19). On May 24, 2018, Defendants filed a Reply. (ECF No. 21).

Defendants filed their Motion to Bifurcate Counts III and IV on April 30, 2018. (ECF No. 16). On May 14, 2018, Peprah filed an Opposition. (ECF No. 20). On May 29, 2018, Defendants filed a Reply. (ECF No. 22).

---

[3] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## II.    DISCUSSION

**A.    Motion to Dismiss**

### 1.    Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678. Finally, the Court must be "especially solicitous" of wrongs alleged in § 1983 causes of action, and should not grant a motion to dismiss in a § 1983 case "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory [that] might plausibly be suggested by the facts alleged." Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (quoting Canty v. City of Richmond, Va. Police Dep't, 383 F.Supp. 1396, 1399 (E.D.Va. 1974), aff'd sub nom. Canty v. Brown, 526 F.2d 587 (4th Cir. 1975)).

## 2. Analysis

Defendants make three arguments in favor of dismissing Peprah's Complaint. First, they contend that Peprah's Fourteenth Amendment due process claim fails because he does not state a claim for violations of substantive due process or procedural due process. They also contend that he cannot state a claim for excessive force incident to arrest under the Fourteenth Amendment. Second, they maintain that Peprah fails to plausibly allege an equal protection violation. Third, they assert that Peprah fails to state Monell claims. The Court considers each argument in turn.

### a.	Fourteenth Amendment Due Process Claims

### i.	Substantive Due Process

Peprah alleges that Defendants violated his Fourteenth Amendment substantive due process rights to be free from "summary punishment and excessive and unreasonable force" when Defendants forcibly detained him on June 2, 2015. (Compl. ¶ 75). Defendants contend that Peprah's substantive due process claims are properly brought under the Fourth Amendment, not the Fourteenth Amendment. The Court agrees with Defendants.[4]

The U.S. Supreme Court has held that "<u>all</u> claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>see</u> <u>Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst</u>, 810 F.3d 892, 899 (4th Cir. 2016) (analyzing excessive force claim under Fourth Amendment). Because Peprah alleges that Defendants used excessive force in the course of his arrest, his substantive due process claim is properly brought under the Fourth Amendment, not the Fourteenth Amendment.

Nevertheless, Peprah contends that he states substantive due process claims under the Fourth Amendment. Peprah cites to <u>Rochin v. California</u>, 342 U.S. 165 (1952), in

---

[4] Defendants also argue that Officer Defendant's conduct does not "shock the conscience," and therefore is not actionable under the Fourteenth Amendment. Because the Court agrees that Peprah's Fourteenth Amendment Due Process claims are properly brought under the Fourth Amendment, the Court declines to address this argument.

support of his argument that, notwithstanding Graham, the substantive due process clause provides an independent source of protection against summary punishment by police officers in the course of arrest. (Pl.'s Opp'n Defs.' Mot. Dismiss ["Pl.'s Opp'n"] at 6, ECF No. 19). But Rochin predates Graham, and the Supreme Court has explicitly stated that under the framework set forth in Graham, Rochin would be treated under the Fourth Amendment rather than the Fourteenth Amendment. Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 n.9 (1998).

The remaining cases Peprah cites—Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970), and Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973)—are similarly inapposite. Jenkins involves a violation of the Fourth Amendment, not the Fourteenth Amendment. See Jenkins, 424 F.2d at 1231–32. Johnson deals with a purported constitutional violation that occurred after the plaintiff was already in custody, and therefore does not fit within Graham's framework for excessive force claims that occur in the course of arrest. See Johnson, 481 F.2d 1028; see also Orem v. Rephann, 523 F.3d 442, 449 (4th Cir. 2008) (Shedd, J., concurring) (explaining that under Fourth Circuit jurisprudence, the Fourth Amendment governs excessive force claims that arise from conduct occurring before and during arrest, and the Fourteenth Amendment governs excessive force claims that arise after arrest). Peprah, therefore, fails to state a summary punishment or excessive force claim under the Fourteenth Amendment.

### ii.        Procedural Due Process

Peprah alleges that Officer Defendants violated his procedural due process rights by arresting him on the basis of race and "subjecting him to physical beating and arrest"

without reasonable suspicion or probable cause. (Pl.'s Opp'n at 7). But the Supreme Court and the Fourth Circuit have been clear in holding that the Fourth Amendment not only "provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests]," but also "define[s] the 'process that is due' for seizures of persons or property in criminal cases." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017) (first quoting Graham, 490 U.S. at 395, and then quoting Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975)). As the Gerstein Court recognized, the Supreme Court's procedural due process cases that arise in the civil context, and their progeny, which Peprah relies upon,[5] "are inapposite and irrelevant in the wholly different context of the criminal justice system." Gerstein, 420 U.S. at 125 n.27. Peprah, therefore, fails to state a procedural due process claim under the Fourteenth Amendment.

In sum, the Court concludes that Peprah fails to state a substantive or a procedural due process claim. Accordingly, the Court, therefore, will grant Defendants' Motion as to Count I.

### b. Fourteenth Amendment Equal Protection Claim

Defendants argue that Peprah fails to state a claim for violations of the Equal Protection Clause of the Fourteenth Amendment. The Court agrees.

---

[5] Peprah cites to Lachance v. Erickson, 522 U.S. 262 (1998), Cleveland Board of Educucation v. Loudermill, 470 U.S. 532 (1985), and Ingraham v. Wright, 430 U.S. 651 (1977). The remaining cases he cites to bolster his procedural due process argument—Washington v. Glucksberg, 521 U.S. 702 (1997), Planned Parenthood v. Casey, 505 U.S. 833 (1992), Loving v. Virginia, 388 U.S. 1 (1967), and Pierce v. Society of Sisters, 268 U.S. 510 (1925)—are substantive due process cases.

State actors violate the Equal Protection Clause "when the government explicitly classifies people based on race"; or (2) "when a law is facially neutral, but its administration or enforcement disproportionately affects one class of persons over another and a discriminatory intent or animus is shown." Monroe v. City of Charlottesville, 579 F.3d 380, 388 (4th Cir. 2009) (citing Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 818–19 (4th Cir. 1995)).

In this case, Peprah alleges that the arresting officers classified him on the basis of race. Specifically, Peprah pleads that the officers targeted him and subjected him to excessive force in the course of detaining him solely because he is a black man.

Racial classification occurs when police officers develop a "criminal profile of their own volition" and include race as a characteristic in the profile, or when police officers are presented with "conflicting or uncertain evidence" as to a suspect's race and decide to target only individuals of a particular race. See Monroe, 579 F.3d at 388.

Here, the Officer Defendants acted based on information private citizens provided. (Compl. ¶¶ 24, 26). They described the robber of the Verizon store as "a black man" and a "skinny black male." (Id. ¶¶ 24, 26). The two witnesses, not the officers, classified the suspect based on race. Cf. Shaw v. Reno, 509 U.S. 630, 643 (1993) (holding that a Fourteenth Amendment violation may only arise from government conduct, not from the conduct of private citizens). The Officer Defendants, therefore, did not classify Peprah on the basis of race.

Nevertheless, Peprah argues that Monroe is distinguishable because the police officers in Monroe homed in on a suspect who fit the description, given by at least three

witnesses, of a "youthful-looking black male" assailant. (Pl.'s Opp'n at 17). Peprah points out that, in this case, in addition to describing the suspect's race, the two witnesses described the suspect as "approximately 6'0" to 6'2" tall, with a slender build and approximately 25 to 30 years of age," and "approximately 20 to 30 years old and between 5'11" to 6'1" tall." (Compl. ¶¶ 24, 26). Peprah, by comparison, was fifty-one years old at the time of the incident and is 5'5" tall. (Id. ¶ 29). Peprah argues that the discrepancies between the height and age of the alleged robber and his own height and age not only distinguish this case from Monroe, but also add further credence to his claim that the Officer Defendants were approaching suspects on the basis of race alone, in violation of the Fourteenth Amendment. The Court is not persuaded.

Here, the Officer Defendants acted based on information that two private citizens provided—and the citizens each provided the same description of the suspect's race. While the Officer Defendants may not have adhered to the witnesses' descriptions of the suspect's age or height, they did adhere to the witnesses' description of the suspect's race. Further, the Officer Defendants did not home in on Peprah based on his race alone. They also acted based on GPS information of the suspect's whereabouts, which indicated that his car was on Phelps Luck Drive, the same road where Officers Williams, Lux, and Doe stopped Peprah. (Compl. ¶¶ 3, 5–6, 30–33).

In sum, Peprah fails to state a Fourteenth Amendment Equal Protection claim. Accordingly, the Court will grant Defendants' Motion to Dismiss as to Count V.

Further, a Monell claim can only proceed if the plaintiff establishes an underlying constitutional violation. See James v. Frederick Cty. Pub. Sch., 441 F.Supp.2d 755, 758

(D.Md. 2006) (citing Temkin v. Frederick Cty. Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991)). Here, Count III of the Complaint is a Monell claim premised on violations of the Fourteenth Amendment. Because the Court will dismiss Counts I and V—Peprah's only Fourteenth Amendment claims—the Court will grant Defendants' Motion as to Count III.

### c.   Monell Claims

Under Monell, a municipality, such as Howard County, is subject to suit under § 1983. 436 U.S. at 690. A plaintiff may sue a municipality under § 1983 if he suffered a constitutional violation at the hands of an employee acting under color of a municipal policy. Id. at 692. Under Monell, however, "a municipality is liable only for its own illegal acts." Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014). As a result, "[o]nly if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of Monell liability." Id. at 402. Liability under respondeat superior is insufficient under Monell's standard. Monell, 436 U.S. at 693–94.

All § 1983 Monell claims have three elements: "(1) identifying the specific 'policy' or 'custom'[;] (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation." Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987); see also Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *12 (D.Md. July 24, 2015) ("[A] municipality is liable when a policy or custom is fairly attributable to the municipality as its own, and is . . . the moving force behind the particular constitutional violation." (citation and internal quotation marks omitted)).

11

There are four kinds of customs, policies, or practices that a plaintiff can allege: (1) the "decisions of a government's lawmakers"; (2) "the acts of its policymaking officials"; (3) "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights," known as a "failure to train" claim; and (4) "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

"Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. To state a Monell claim under Rule 12(b)(6) sufficiently, a plaintiff "need only allege facts which, if true, 'state a claim to relief that is plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). The complaint's facts "need not be particularly detailed, and the chance of success need not be particularly high." Id. "A plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." Id. (quoting Iqbal, 556 U.S. at 678).

Here, Peprah alleges that Howard County subscribes to the third and fourth types of Monell customs, policies, or practices—failure to train officers about their legal duties to avoid constitutional violations and failure to correct persistent and widespread unconstitutional practices, known as a condonation claim. Defendants argue that Peprah does not sufficiently state either type of claim. The Court examines each claim in turn.

### i. Failure to Train

At bottom, the Court will not dismiss Peprah's failure to train claim against Howard County.

To state a claim for failure to train a plaintiff must plead "facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." Jones, 2015 WL 4509871, at *18 (quoting Lewis v. Simms, No. AW-11-CV-2172, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012)). The Court considers each of these three elements.

### aa.    Nature of the Training

It is not sufficient to state "in broad, conclusory terms and in a variety of different ways" that the police department "failed to train and supervise its officers." Peters v. City of Mount Rainier, No. GJH-14-0955, 2014 WL 4855032 at *5 (D.Md. Sept. 29, 2014). Nor is alleging a "general laxness or ineffectiveness" sufficient. Shields v. Prince George's Cty., No. GJH-15-1736, 2016 WL 4581327, at *9 n.11 (D.Md. Sept. 1, 2016) (quoting Spell, 824 F.2d at 1390). Instead, a plaintiff must allege a "specific deficiency" in the training. Id.

Defendants argue Peprah has only made conclusory allegations that are insufficient to state a failure to train claim. The Court disagrees.

Here, Peprah alleges that Howard County: "failed to adequately train, supervise, and discipline its officers against arrest and imprisonment without probable cause," (Compl. ¶ 110); "failed to effectively instruct officers that they have a duty to prevent and report false arrest when it occurs," (id. ¶ 111); and failed to "critically evaluat[e] the need for a change in training," (id.).

Thus, Peprah does not simply state "in broad, conclusory terms" that Howard County failed to train and supervise its officers, see Peters, 2014 WL 4855032 at *5, nor

does he allege a "general laxness or ineffectiveness" with Howard County's training, see Shields, 2016 WL 4581327, at *9 n.11. Instead, Peprah identifies "specific deficienc[ies] with the training: lack of proper training on arrest and imprisonment without probable cause; and, officers' duty to prevent and report false arrest. See id. at *9 n.11; see also Cortez v. Prince George's Cty., 31 F.App'x 123, 129 (4th Cir. 2002) (concluding that the complaint sufficiently stated a failure to train claim when plaintiff pled that defendant "fail[ed] to train correctional officials to provide inmates who exhibit obvious symptomatology of suicidal risk . . . with adequate medical and mental health screening").

The Court, therefore, concludes that Peprah sufficiently states the nature of the training for his failure to train claim.

### bb. Deliberate or Conscious Choice by the Municipality

A "municipality's failure to train its employees" must constitute "deliberate indifference to the rights of persons with whom the untrained employees come into contact" to satisfy § 1983. Connick, 563 U.S. at 61 (alterations omitted) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Only when there is deliberate indifference can a city's failure to train "be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. (quoting Canton, 489 U.S. at 389). Generally, deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)). A municipality may be deliberately indifferent "if the policymakers choose to retain" a training program despite "actual or

constructive notice" that an omission in the program causes officers "to violate citizens' constitutional rights." Id. (citing Brown, 520 U.S. at 407). Alleging deliberate indifference, however, as with stating any other Monell claim under Rule 12(b)(6), only requires a plaintiff to "allege facts which, if true, 'state a claim to relief that is plausible on its face.'" Owens, 767 F.3d at 403 (quoting Iqbal, 556 U.S. at 678).

Here, Peprah asserts that Howard County has "failed to keep accurate records as to the number of false arrests by members of its police force," and "lacks an effective internal affairs procedure and has no meaningful system to control or monitor the recurrence of false arrest by officers who have a pattern or history of such behavior." (Compl. ¶ 111). Peprah, therefore, alleges that officers have a history of making arrests without probable cause and yet Howard County has failed to either document these instances or control their occurrence. At the motion to dismiss stage, these allegations are sufficient. Owens, 707 F.3d at 403 (quoting Iqbal, 556 U.S. at 678).

The Court, therefore, will not dismiss Peprah's failure to train claim for failure to state deliberate indifference.

### cc.    Causation

For Monell claims, a plaintiff must show that the custom, policy or practice "is the moving force behind the specific constitutional violation." Robinson v. Prince George's Cty., No. PJM-09-181, 2011 WL 1743263, at *5 (D.Md. May 6, 2011) (citing Spell, 824 F.2d at 1387), aff'd, 465 F.App'x 238 (4th Cir. 2012). When, as here, the alleged custom is not facially unconstitutional, the custom is the moving force only if a plaintiff proves that the custom caused his constitutional violation. Id. (citing Spell, 824 F.2d at 1387).

Proof that the custom was "likely" to cause a particular violation is not sufficient to prove causation. Spell, 824 F.2d at 1388 (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)). Instead, an "affirmative link" between the custom and the violation must be proven. Id. (quoting Tuttle, 471 U.S. at 823). Proving an affirmative link requires showing a "close fit" between the custom and the constitutional violation. Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

For failure to train claims, an affirmative link means that the deficiencies in training "make occurrence of the specific violation a reasonable probability rather than a mere possibility." Spell, 824 F.2d at 1390. In other words, the deficiencies in training made the specific violation "almost bound to happen, sooner or later, rather than merely likely to happen in the long run." Id. (internal quotation marks omitted). "[T]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." Canton, 489 U.S. at 390.

Here, Peprah pleads that Howard County fails to properly train officers to avoid arrest and imprisonment without probable cause. (Compl. ¶¶ 110–11). Peprah alleges that this practice was in place at the time of his arrest. (Id. ¶ 112). The Officer Defendants allegedly detained Peprah for a significant period of time without probable cause. (Id. ¶ 86). Based on Peprah's assertions, the Court concludes that he plausibly states that Howard County's training deficiencies caused his constitutional injury. See Robinson, 2011 WL 1743263, at *5. Peprah sufficiently states that the training deficiencies were not just "likely," but were the "affirmative link" to his alleged unconstitutional stop and arrest. See Spell, 824 F.2d at 1388 (first citing Tuttle, 471 U.S. at 823; and then citing id.

at 833 n.9 (Brennan, J., dissenting)). An affirmative link is present because there is a "close fit" between the training deficiencies—Howard County failing to properly train officers to prevent arrests without probable cause—and the Officer Defendants allegedly detaining Peprah without probable cause. See Carter, 164 F.3d at 218. Thus, the Court will not dismiss Peprah's failure to train claim for failure to plausibly allege that Howard County's training deficiencies caused his constitutional injury.

In sum, the Court will not dismiss Peprah's failure to train claim against Howard County. The Court next considers Peprah's other Monell claim: condonation.

### ii.    Condonation Claim

"Under th[e] [condonation] theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1389).

Defendants argue that Peprah does not sufficiently state a condonation claim against Howard County. At bottom, the Court disagrees and will not dismiss Peprah's condonation claim.

### aa.    Knowledge and Deliberate Indifference

Generally, bringing a condonation claim requires a plaintiff to prove "a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1391). Both elements "can be inferred from the 'extent' of employees' misconduct." Id. (quoting Spell, 824 F.2d at 1386–91). Only "widespread or

flagrant" misconduct is sufficient. Id. at 403 (quoting Spell, 824 F.2d at 1387). "Sporadic or isolated" misconduct is not. Id.

While proving a condonation claim "is no easy task," alleging a condonation claim is, "by definition, easier." Id. at 403. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only support his condonation claim with facts which, if true, "state a claim to relief that is plausible on its face." Id. (quoting Iqbal, 556 U.S. at 678). The facts "need not be particularly detailed," and a plaintiff fails to state a condonation claim "only when he offers 'labels and conclusions' or formulaically recites the elements" of his condonation claim. Id. (quoting Iqbal, 556 U.S. at 678).

Defendants argue that Peprah does not sufficiently allege widespread or flagrant constitutional violations by Howard County police officers. The Court disagrees.

Here, Peprah pleads that "other prior incidents involving county officers" establish that Howard County has a custom or policy of encouraging officers to arrest without probable cause. (Compl. ¶ 111). The Complaint alleges that the pattern of "arrest without probable cause, cover-up, and failure to investigate" is "manifest" in these prior incidents. (Id.). The allegations of "other prior incidents" are factual allegations that, if documented during discovery, could support a Monell claim. Owens. 767 F.3d at 403. If Howard County police officers made arrests without probable cause on multiple prior occasions, this fact could support a "persistent and widespread practice." See id.[6] If these

---

[6] Defendants cite several cases from the District of Maryland in support of their proposition that the conclusory allegations in the Complaint cannot survive their Motion: Williams v. Mayor of Balt. City, No. WMN-14-1125, 2014 WL 5707563 (D.Md. Nov. 4, 2014) (granting motion to dismiss because the complaint contained no facts in support of

incidents occurred with sufficient frequency, they could indicate "deliberate indifference." Id.

The Court, therefore, will not dismiss Peprah's condonation claim for failure to plausibly allege Howard County's knowledge or deliberate indifference.

### bb.    Causation

Having alleged a custom, policy, or practice of making unconstitutional arrests, Peprah must still sufficiently plead a causal connection between the custom and the constitutional injury Peprah allegedly suffered. Spell, 824 F.2d at 1391. Generally, a "sufficiently close causal link . . . is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." Id. When reviewing the Complaint under Rule 12(b)(6), however, a plaintiff "need not 'plead the multiple incidents of constitutional violations' that may be necessary at later stages" to allege causation plausibly. J.A. v. Miranda, No. PX-16-3953, 2017 WL 3840026, at *7 (D.Md. Sept. 1, 2017) (quoting Jordan by Jordan v. Jackson, 15 F.3d 333, 339–40 (4th Cir.

---

the alleged policy or custom beyond the facts of plaintiff's own arrest); Lee v. O'Malley, 533 F.Supp.2d 548 (D.Md. 2007) (granting motion to dismiss because the complaint merely stated "said arrests are a matter of policy, tradition and custom"); Lanford v. Prince George's Cty., 199 F.Supp.2d 297 (D.Md. 2002) (granting motion to dismiss because the complaint contained no factual allegations beyond those surrounding plaintiff's own arrest regarding a custom or practice); Ihenachor v. Maryland, No. RDB-17-3134, 2018 WL 1863678 (D.Md. 2018) (granting motion to dismiss because complaint only alleged one incident). These cases do not dictate the outcome Defendants request. Peprah supplies factual allegations of prior incidents of the same constitutional violations that occurred in Peprah's case. At the motion to dismiss stage, these factual allegations suffice. Tellingly, the sole Fourth Circuit case Defendants cite to, Lytle v. Doyle, 326 F.3d 463 (4th Cir. 2003), discusses a Monell claim at the summary judgment stage, rather than at the motion to dismiss stage.

1994)).[7] Rather, it is sufficient that a plaintiff allege that the municipality "was aware of ongoing constitutional violations" by the municipality's officers and that the municipality's failure to discipline its officers "allowed" a custom, policy, or practice "of unconstitutional violations to develop." Id. (quoting Garcia v. Montgomery Cty., No. JFM-12-3592, 2013 WL 4539394, at *5 (D.Md. Aug. 23, 2013)).

Defendants argue that Peprah has not sufficiently pled that Howard County has a custom, policy, or practice of condoning unconstitutional stops and arrests that caused Peprah's injury. The Court disagrees.

At this stage of the case, Peprah must only allege that Howard County was aware of the unconstitutional stops and arrests by its officers and that its failure to discipline the offending officers condoned this custom. See id. Peprah pleads that there has not only been "a regular pattern and practice of arrest without probable cause," but also a "cover-up, and failure to investigate" these incidents. (Compl. ¶ 111). Further, Peprah alleges that Howard County "lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of false arrest by officers who have a

---

[7] Some courts have questioned whether Jordan remains good law because the Fourth Circuit decided it before the Supreme Court established Rule 8(a)'s plausibility standard in Twombly and Iqbal. See, e.g., Taylor v. Somerset Cty. Comm'rs., No. RDB-16-0336, 2016 WL 3906641, at *10 (D.Md. July 19, 2016); Cook v. Howard, 484 F.App'x 805, 810 (4th Cir. 2012). The Court relies on Jordan to the extent that Peprah's allegations still satisfy Twombly and Iqbal's plausibility standard, as this Court has done in other recent cases. For example, in Miranda, this Court concluded that the plaintiff sufficiently stated a condonation claim because he plausibly alleged that the municipality had a custom, policy, or practice of violating citizens' constitutional right to record police conduct and alleged that other, similar violations also occurred. 2017 WL 3840026, at *7–8. The Miranda Court concluded that the plaintiff plausibly alleged a condonation claim, relying in part on Jordan, without separately addressing whether the plaintiff pleaded the causation element. See id.

pattern or history of such behavior." (Id.). Thus, the Court will not dismiss Peprah's condonation claim for failure to allege plausibly that Howard County's custom, policy, or practice caused his injury.

In sum, the Court will not dismiss Peprah's condonation claim against Howard County. Accordingly, the Court will deny Howard County's Motion as to Count IV.

**B.     Motion to Bifurcate**

Defendants ask the Court to bifurcate Counts III and IV from the remaining Counts in the interest of judicial economy and to avoid the introduction of potentially prejudicial information against the individual Defendants.[8] Peprah opposes bifurcation.

Rule 42(b) governs the bifurcation of cases. Under this Rule, the Court may bifurcate claims "[f]or convenience, to avoid prejudice, or to expedite and economize" the judicial process. Fed.R.Civ.P. 42(b). Courts have "broad discretion in deciding whether to bifurcate claims for trial." Dawson v. Prince George's Cty., 896 F.Supp. 537, 539 (D.Md. 1995) (first citing Fed.R.Civ.P. 42(b); and then citing Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993)).

Here, Peprah can only bring a successful Monell claim against Howard County if he establishes that the various officers involved in his arrest violated his constitutional rights. See James, 441 F.Supp.2d at 758 (citing Temkin, 945 F.2d at 724). This Court has repeatedly held that bifurcation is appropriate in cases involving § 1983 claims against individual defendants and municipalities. See, e.g., James, 441 F.Supp.2d at 762;

_____

[8]  Because the Court will grant Defendants' Motion to Dismiss as to Count III, the Court will deny as moot Defendants' Motion to Bifurcate as to Count III.

Marryshow v. Town of Bladensburg, 139 F.R.D. 318, 319–21 (D.Md. 1991); Dawson, 896 F.Supp. at 540; cf. Brown v. Bailey, No. RDB-11-01901, 2012 WL 2188338, at *4 (D.Md. June 13, 2012) ("This Court has consistently held that in the context of Section 1983 claims, bifurcation of the Monell supervisory claims from the individual claims is appropriate and often desirable."). Bifurcation avoids the introduction of potentially prejudicial evidence because evidence introduced in support of a practice or policy that underlies a Monell claim may prejudice individual defendants. See Marryshow, 139 F.R.D. at 320. Further, bifurcation advances judicial economy because a plaintiff who cannot establish a constitutional violation by a municipal officer cannot prevail on a Monell claim against a municipality. Id. at 319–20. Bifurcation, therefore, preserves scarce judicial and party resources by avoiding expenses related to Monell claims until a plaintiff has established the existence of an underlying constitutional violation. Id.

In short, because bifurcation helps to avoid prejudice and promotes judicial economy, the Court will grant Defendants' Motion to Bifurcate Count IV.

### III. CONCLUSION

For the foregoing reasons, the Court will: (1) grant in part and deny in part Defendants' Motion to Dismiss Counts I, III, IV, and V (ECF No. 15); and (2) grant in part and deny as moot in part Defendants' Motion to Bifurcate Counts III and IV (ECF No. 16). A separate order follows.

Entered this 15th day of January, 2019

_____/s/_____
George L. Russell, III
United States District Judge